| | |
|---|---|
| PATRICK RYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:23-cv-00049 |
| ) | |
| CITY OF SPRING HILL, TENNESSEE, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE HOLMES |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is a motion for summary judgment (Doc. No. 25). filed by Defendant City of Spring Hill, Tennessee ("Spring Hill"), which is fully briefed. (*See* Doc. Nos. 32, 51). For the reasons provided herein, Spring Hill's motion (Doc. No. 25) is **DENIED**.[1]

### I. FACTUAL BACKGROUND[2]

This is a civil rights lawsuit arising from Plaintiff Patrick Ryan's ("Ryan") employment for the Spring Hill Police Department as a canine officer.

At the beginning of November 2022, Ryan complained that Spring Hill was not paying him overtime as required under the Fair Labor Standards Act ("FLSA"). (Doc. No. 42-1). Two

---

[1] For ease of reference, the statements of material facts and responses there are cited as follows:

- Spring Hill's Statement of Undisputed Material Facts (Doc. No. 28) together with Plaintiff Patrick Ryan's Response (Doc. No. 48) is cited as "Spring Hill SOF ¶ __."

- Plaintiff Patrick Ryan's Statement of Additional Material Facts (Doc. No. 33) together with Spring Hill's Response (Doc. No. 52) is cited as "Pl. SOF ¶__."

[2] At this stage, the Court construes the factual record in the light most favorable to Plaintiff Patrick Ryan, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). The factual background in this Memorandum it is not a complete statement of the facts in this case but rather includes the facts necessary for the Court's analysis and resolution of the pending motion.

weeks later, Spring Hill retroactively paid Ryan $513.10. (Doc. No. 27-2 ("The reason for this payroll correction is due to the underpayment of our K-9 Officers.")).

Prior to complaining about his overtime pay, Ryan had applied for and was allowed to work for overtime pay under the Governor's Highway Safety Grant program just as any other officer could. (Ryan Decl., Doc. No. 34 ¶ 7; Pl. SOF ¶ 39).[3] A month or two after complaining about overtime, Ryan's supervisor, Lt. Carden, told him that he could not apply for Governor's Highway Safety Grant overtime or any other overtime any longer since he had made such a "big stink" about his pay. (Pl. SOF ¶¶ 40, 41; Ryan Decl., Doc. No. 34 ¶ 7; Ryan Deposition, 72:2-18).[4] No other officer besides Ryan was specifically told they were not allowed to apply for that type of overtime or any other type of overtime. (*See id.*).

Prior to complaining about his overtime pay, Ryan let his dog Narco roam around in public parking lots to relieve himself on a regular basis, including at night after dark. (Pl. SOF ¶ 26). Ryan discussed the fact that Narco did this with Deputy Chief Seibold and Lt. Carden because he wanted to have Narco neutered to reduce his need to do this to relieve himself or "mark" his territory. (Pl. SOF ¶ 27). Seibold and Carden refused to allow Narco to be neutered, they knew that he sometimes used parking lots to relieve himself, and they knew that Ryan worked mostly night shifts. (Pl. SOF ¶ 28). About three months after complaining about his overtime pay, on the evening of February 8, 2023, Ryan conducted a traffic stop and then joined other officers responding to a call for service at Home Depot involving a person suspected of potentially shoplifting. (Spring Hill SOF ¶¶ 24, 32). Ryan let Narco run around the Home Depot parking lot off leash without deploying his body camera, after which Narco alerted on the vehicle belonging

---

[3] The Governor's Highway Safety Grant program was a grant to fund overtime pay of officers doing DUI enforcement. (Pl. SOF ¶ 38).

[4] Lt. Carden denies making any such statements to Ryan. (Carden Decl., Doc. No. 52-2 ¶¶ 6, 7).

2

to the subject suspected of shoplifting. (Spring Hill SOF ¶¶ 33, 35). On February 13, 2023, Dep. Chief Seibold filed an administrative complaint in connection with Ryan's February 8th traffic stop and response to Home Depot call for service. (*Id*. ¶¶ 45-47). That complaint resulted in the commencement of an internal investigation led by Lt. Carden. (*Id*. ¶ 47). At the end of his investigation, Lt. Carden concluded that Ryan had violated multiple department policies on February 8, 2023. (*Id*. ¶ 71). On March 2, 2023, Spring Hill decided to terminate Ryan's employment. (*Id*. ¶ 74).

On August 7, 2023, Ryan filed the present action against Spring Hill, asserting claims under the FLSA for failure to pay overtime and retaliation. (Doc. No. 1). Spring Hill filed its motion for summary judgment on October 4, 2024, seeking dismissal of both claims. (Doc. No. 25).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich*., 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence,

judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id*. The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

"The Fair Labor Standards Act of 1938 requires employers to pay their employees a minimum wage and overtime compensation." *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025). "Additionally, the FLSA contains an antiretaliation provision that makes it unlawful 'to discharge or in any other manner discriminate against any employee because such employee has filed any complaint[.]'" *Caudle v. Hard Drive Express, Inc.*, 91 F.4th 1233, 1237 (6th Cir. 2024) (quoting 29 U.S.C. § 215(a)(3)).

#### A. FLSA – Unpaid Overtime

The FLSA requires an employer to pay its employees overtime wages at a rate of not less than one and one-half times the regular rate of pay for every hour that employees work over 40 hours per week. *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020); *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 207(a)(1).[5] The employee claiming that he was not

---

[5] Although the FLSA exempts many categories of employees from the overtime-pay requirement such exemptions are an affirmative defense for which the employer has the burden of proof. *See E.M.D.*, 604 U.S. at 48 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–197 (1974)); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 188 (6th Cir. 2017) (An exemption to the overtime requirements in the FLSA is an affirmative defense, and an employer seeking to assert one must establish through clear and affirmative evidence that the employee meets every requirement of the exemption); *see e.g.*, *Vance v. Vill. of Highland Hills*, 2021 WL 4963365, at *1 (6th Cir. Oct. 26, 2021) ("The Village answered with several affirmative defenses, including that it qualified for the exemption for overtime for public safety officers set out in the FLSA, 29 U.S.C. § 207(k).").

4

paid this overtime rate "has the burden of proving that he performed work for which he was not properly compensated." *Viet*, 951 F.3d at 822 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972)).[6]

Through its pending motion, Spring Hill attempts to show that Ryan lacks such evidence by noting from his deposition testimony that the amount of overtime he worked each week varied from week to week and that he was unsure how holidays, sick pay, or paid leave factored into his alleged overtime hours worked. (Doc. No. 27 at 24; Spring Hill SOF ¶¶ 18-20). Ryan's foregoing testimony does not show that he lacks proof of performing work for which he was not properly compensated. And Spring Hill's argument to the contrary ignores the other portions of Ryan's deposition testimony addressing his typical work week hours/days as well as the time spent performing various specific tasks for which he is claiming he was not properly compensated. (*See, e.g.*, Ryan Deposition at 39, 48-61). Viewing the facts in the light most favorable to Ryan as the nonmoving party, a reasonable jury could conclude that he performed work for which he was not properly compensated.

**B. FLSA – Retaliation**

1. *Prima facie* case of retaliation

FLSA retaliation claims premised on circumstantial evidence are decided under the familiar *McDonnell/Douglas* burden shifting framework whereby a plaintiff must first establish a

---

[6] If the employee "carries this initial burden but cannot recall the precise number of unpaid overtime hours, the employee may seek the work records that the FLSA requires employers to maintain." *Id.* (citing *Anderson*, 328 U.S. at 687). If the employer has failed to keep the requisite records, the employee may still establish his damages by "produc[ing] sufficient evidence to show the amount and extent of [his uncompensated] work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The "threshold question," however, before reaching the question of damages and the plaintiff's proof of damages, is whether he can establish that he worked overtime in the first place. *Viet*, 951 F.3d at 822.

*prima facie* case of retaliation by showing that (1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) the employer took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Caudle v. Hard Drive Express, Inc.*, 91 F.4th 1233, 1237–38 (6th Cir. 2024) (citing *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006)). When analyzing the *prima facie* case, a court may not consider the employer's alleged nonretaliatory reason for taking an adverse employment action. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) ("Sixth Circuit case law warns against conflating the first (*prima facie* case) and second (articulation of a legitimate non-discriminatory reason) steps in the *McDonnell–Douglas* analysis."); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002) ("...the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a *prima facie* case.").

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, then the burden shifts back to the plaintiff to show that this legitimate, non-retaliatory reason was pretext. *Id*. at 255.

Spring Hill attempts to show that Ryan lacks evidence of a causal connection between his overtime complaint and subsequent termination by arguing he cannot rely on temporal proximity alone. (Doc. No. 27 at 14 (citing *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) ("a roughly 75-day delay between [employee's] protected activity and an adverse employment

action is not, standing alone, a convincing case for proving causation.")). Spring Hill's foregoing argument fails to demonstrate Ryan lacks evidence of causation because it ignores the evidence that, less than two months after Ryan complained about his overtime pay, Lt. Carden told him he could not apply for or receive any overtime pay because he had complained about his overtime pay. (Pl. SOF ¶¶ 40, 41). Moreover, it fails to acknowledge Ryan's proof of heightened scrutiny of his work performance after he complained about his overtime pay. (Pl. SOF ¶¶ 26-28).[7] Viewing the facts in the light most favorable to Ryan as the nonmoving party, Spring Hill has failed to show that he lacks proof of causation or the absence of material disputes of fact in connection with this element of his *prima facie* FLSA retaliation case.

Spring Hill also urges the Court to find no causal connection by taking into account its alleged non-retaliatory reason for terminating Ryan. (Doc. No. 27 at 14-15 ("the discovery of Plaintiff's policy violations would serve as an intervening cause which would dispel any inference of causation also set forth in *Kenney*.")).[8] A court, however, may not do so when analyzing the *prima facie* case. *See supra*.

---

[7] According to the Sixth Circuit, heightened scrutiny is reflected by a three-step pattern:

> …an employee engages in conduct that, while technically objectionable, is blessed, or at least tolerated, by the employer; the employee engages in protected activity; the employer then takes an adverse action against the employee for conduct the employer had previously allowed.

*Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) (citations omitted).

[8] In *Kenney*, the employer produced evidence that it fired the plaintiff because the attrition rate doubled under her supervision, during a time when the company needed to increase its workforce to keep up with its contracts. *See Kenney*, 965 F.3d at 451. Accordingly, the court in *Kenney* was able to consider the two intervening causes: (1) complaints filed against plaintiff and (2) the documented instances of employees leaving due to her management style because neither of them were also the employer's asserted legitimate, nondiscriminatory reason for the adverse action. *Id*. at 450.

2. <u>Legitimate, non-retaliatory reason</u>

Despite Spring Hill's failed challenge to Ryan's proof of his *prima facie* case, if it can "clearly set forth, through the introduction of admissible evidence," a legitimate, non-retaliatory reason for its employment decision, then the burden shifts back to Ryan to show that this legitimate, non-retaliatory reason was pretext. *Burdine*, 450 U.S. at 255.

Here, Spring Hill claims that it terminated Ryan for violating department policies. (*See* Doc. No. 27 at 15-17 (citing *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 327 (6th Cir. 2021) (termination for insubordination in violation of policy constitutes a legitimate, nondiscriminatory reason for adverse employment actions)). It appears that Spring Hill attempts to meet its burden of producing admissible evidence clearly setting forth a legitimate, non-retaliatory reason for its employment decision via the following excerpts from its 30(b)(6) deposition testimony:

> Q. That's basically the – I just want to get to the termination of Mr. Ryan. How did that come to the attention of the city at the city's level and what was the involvement at the city management level about the decision to terminate.
>
> A. So all decisions to terminate have to go through me before they are effective.
>
> Q. All right. Getting back to the city's knowledge about the city's involvement with the termination of Mr. Ryan. Can you just give me the rundown?
>
> A. The chief came to me and said, "I think we have a problem." He explained an incident that had happened either that night before, maybe a couple nights before – just because of scheduling, I can't remember – that happened in the Home Depot parking lot where Mr. Ryan let his dog off leash and that he did not follow what was considered to be good K-9 protocol for the way that dog was being handled that night.
>
> He expressed that he had some concerns and he told me he was going to start an internal investigation. I said, "Keep me up to date on what's going on." He said, "I will let you know when the investigation's complete."

8

> Q. You said "chief." Chief Brite?
>
> A. Brite, yes. Chief Brite.
>
> Q. Were there any other officers with him?
>
> A. No. It was just Chief Brite.
>
> I don't remember time frames. That's completely history to me, but there was a point in time when he came to me before the investigation was complete and said, "We have opened up a can of worms here. I don't think this is going to end very well." I asked him what he meant. He told me that there was a – seemed to be a practice of using the dog inappropriately and that they hadn't gotten to a final determination yet, but he was concerned that that was going to be the case.
>
> I think at that time we brought Richard in to make sure we were doing everything by the book –
>
> Q. Richard Stokes?
>
> A. Richard Stokes, yes.
>
> And the police department was doing their appropriate disciplinary review, camera review, policy.
>
> An internal investigation report was completed. The chief brought it to me. I glanced over it, had Richard in the room. We discussed options and a decision to terminate was made.

(Spring Hill SOF ¶ 74 (citing Spring Hill 30(b)(6) Deposition at 14:25-15:6; 16:4-17:19)).

Viewing the facts in the light most favorable to Ryan as the nonmoving party and drawing reasonable inferences in his favor, the foregoing evidence does not "clearly set forth" the legitimate, non-retaliatory reason articulated in Spring Hills's briefing for why it terminated Ryan's employment, *i.e.*, Ryan's violations of department policies. *See Burdine*, 450 U.S. at 255 n.9 ("An articulation not admitted into evidence will not suffice."). Because Spring Hill has failed to meet its burden at step two of the *McDonnell Douglas* framework, the Court does not reach pretext.

3. <u>After-acquired evidence defense</u>

Spring Hill also seeks to assert an after-acquired evidence defense, which limits an employee's remedies where an employer can show it would have been entitled to terminate the employee for severe wrongdoing if it had known of the employee's wrongdoing at the time. (*See* Doc. No. 27 at 21-22 (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995) (Resolving a circuit split, the Court reasoned that because the ADEA's remedial provisions are designed both to compensate injured employees and to deter employers from discriminating, after-acquired evidence does not serve as a total bar to relief under all circumstances); *Wehr v. Ryan's Fam. Steak Houses, Inc.*, 49 F.3d 1150 (6th Cir. 1995) (after-acquired evidence defense applicable to Title VII claims)). And while the Supreme Court and the Sixth Circuit have held that this defense is available for claims under Title VII and the ADEA, Spring Hill does not present any case law confirming its availability for claims under the FLSA. In the absence of supporting legal authority, the Court is not persuaded the after-acquired evidence defense is available to Spring Hill in the present FLSA matter.

### IV. CONCLUSION

For the foregoing reasons, Spring Hill's motion for summary judgment is **DENIED**.

It is so **ORDERED.**

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE